UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARTHUR GLICK TRUCK SALES, INC.,

                       Plaintiff,

          -against-

HYUNDAI MOTOR AMERICA,

                       Defendant.

**OPINION AND ORDER**

22-CV-01213 (PMH)

PHILIP M. HALPERN, United States District Judge:

    Arthur Glick Truck Sales, Inc. ("Plaintiff" or "Glick") initiated this action against Hyundai Motor America ("Defendant" or "HMA") on February 11, 2022, asserting the following claims for relief: (1) violation of Federal Automobile Dealers' Day in Court Act ("ADDCA"), 15 U.S.C. § 1222 *et seq.*; (2) violation of the Franchised Motor Vehicle Dealer Act, New York Veh. & Traf. Law ("VTL") §§ 460-473 (the "Dealer Act"); and (3) breach of contract. (Doc. 1, "Compl."). Defendant filed its answer on March 25, 2022, and the parties thereafter engaged in discovery, which was extended multiple times, pursuant to a Civil Case Plan and Scheduling Order (Doc. 18; Doc. 21; Doc. 27; Doc. 30; Doc. 33; Doc. 36).

    Defendant served its motion for summary judgment in accordance with the briefing schedule set by the Court. (Doc. 45; Doc. 46; Doc. 47, "Def. Br."; Doc. 48, "Sullivan Decl."; Doc. 49).[1] Plaintiff opposed Defendant's motion (Doc. 50; Doc. 51, "Pl. Br."), and the motion was fully briefed with the filing of Defendant's reply papers (Doc. 52, "Reply"; Doc. 53).

---

[1] Citations to the documents referenced herein correspond to the pagination generated by ECF.

Defendant filed a revised Rule 56.1 Statement with Plaintiff's responses thereto on October 2, 2023, in accordance with the Court's directive. (Doc. 54; Doc. 55; Doc. 56, "56.1").[2]

For the reasons set forth below, Defendant's motion for summary judgment is GRANTED in part and DENIED in part.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from the pleadings, Defendant's Rule 56.1 Statement and Plaintiff's responses thereto, and the admissible evidence proffered by the parties. Unless otherwise indicated, the facts cited herein are undisputed.

HMA manufactures vehicles for the consumer-oriented passenger vehicle market, including sport utility vehicles, crossover vehicles, sedans, and compact cars. (Compl. ¶¶ 7-8). Plaintiff's business is to sell vehicles and is principally owned by Arthur Glick. (*Id*. ¶¶ 12-16). HMA and Glick were parties to a series of Hyundai Motor America Dealer Sales and Service Agreements (the "Dealer Agreement") from 2006 through 2020, pursuant to which Glick owned and operated a Hyundai dealership at 48 Bridgeville Rd., Monticello, NY. (56.1 ¶ 1). Section 5 of the Dealer Agreement provides in pertinent part that any change in ownership of the dealership "requires the prior written consent of HMA, which HMA shall not unreasonably withhold." (*Id*. ¶ 2).

On or about February 19, 2020, Glick entered into an Asset Sale Agreement (the "ASA") to sell its business assets, including its Hyundai, Kenworth, and GMC franchises, to Gabrielli Kenworth, LLC ("Gabrielli"). (*Id*. ¶ 3). Romolo Gabrielli was to be the Dealer Principal of the Hyundai dealership if the sale was approved. (*Id*. ¶ 5). Gabrielli's obligation to purchase the

---

[2] Defendant filed two versions of its Rule 56.1 Statement. (Docs. 55-56). The Court refers herein to the later-filed document (Doc. 56) which is titled "[Corrected] Defendant's Rule 56.1 Statement and Plaintiff's Responses Thereto."

assets was contingent upon, *inter alia*, HMA's issuance and execution of a standard form and term Dealer Sales and Service Agreement. (*Id*. ¶ 6).

HMA turned down the proposed transfer of the Hyundai franchise to Gabrielli via letter dated March 19, 2020, on the grounds that "[Gabrielli] and its principals do not meet HMA's normal, reasonable, and uniformly applied standards for the appointment of a new Hyundai dealer" and "HMA . . . requires that dealer owner applicants have significant and successful experience owning and operating new car dealerships. The Proposed Owners of the Proposed Buyers do not meet this requirement. Indeed, while the Proposed Owners have experience operating heavy-duty truck dealerships, they do not have experience owning or operating a new car dealership." (*Id*. ¶ 7; Sullivan Decl., Ex.10 at HMA_000752). On July 27, 2020, Glick and Gabrielli entered into a Third Amendment to the ASA which excluded the Hyundai assets and reduced the purchase price by $350,000. (56.1 ¶¶ 12-15).

On December 8, 2020, Glick notified HMA via email that it was terminating the HMA franchise, stating "[h]aving not heard from you and given certain time constraints, [Glick] has had to make the difficult decision of terminating the Hyundai franchise effective close of business on December 9, 2020." (56.1 ¶ 9; Sullivan Decl., Ex.17).

This litigation followed.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"

*Liverpool v. Davis*, No. 17-CV-3875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[3] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343, 2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023); *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)).

The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *McKinney*, 49 F.4th at 738 (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

917294, at * 4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her[] claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

## ANALYSIS

I.    First Claim for Relief: Violation of the ADDCA

Plaintiff's First Claim for Relief asserts a violation of the ADDCA in connection with Defendant's allegedly unreasonable refusal to consent to the proposed transfer to Gabrielli. (Compl. ¶¶ 43-51). The ADDCA provides in pertinent part that "[a]n automobile dealer may bring suit against any automobile manufacturer . . . by reason of the failure of said automobile manufacturer . . . to act in good faith in performing or complying with any of the terms or provisions of the franchise . . . ." 15 U.S.C. § 1222. The term "good faith" is statutorily defined

as "the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party . . . ." 15 U.S.C. § 1222(e).

"Courts in the Second Circuit have noted that 'good faith' under the ADDCA 'has a narrow, restricted meaning.'" *Action Nissan, Inc. v. Nissan N. Am.*, 454 F. Supp. 2d 108, 118 (S.D.N.Y. 2006) (citing *Bronx Chrysler Plymouth, Inc. v. Chrysler Corp.*, 212 F. Supp. 2d 233, 245 (S.D.N.Y. 2002)). To assert a claim under the ADDCA, "[a] dealer must show[] that the manufacturer coerced the dealer, and that the coercion was calculated to achieve a wrongful objective." *Kings Autoshow, Inc. v. Mitsubishi Motors of N. Am., Inc.*, No. 22-CV-07328, 2023 WL 5200398, at *11 (E.D.N.Y. Aug. 14, 2023); *see also Empire Volkswagen Inc. v. World-Wide Volkswagen Corp.*, 814 F.2d 90, 95-96 (2d Cir. 1987) ("Failure to act in good faith under the [ADDCA] can be found only 'where there is evidence of a wrongful demand enforced by threats of coercion or intimidation.'"); *Lazar's Auto Sales, Inc. v. Chrysler Fin. Corp.*, 83 F. Supp. 2d 384, 388 (S.D.N.Y. 2000) ("summary judgment will be granted unless Plaintiff introduces some evidence that [defendant] made a *wrongful* demand and then *enforced it by threats or coercion or intimidation*." (emphasis in original)). "A wrongful demand may be inferred 'from all the facts and circumstances' even in the absence of evidence that a formal, explicit demand was made." *Bronx Chrysler Plymouth, Inc.*, 212 F. Supp. 2d at 245 (citing *Marquis v. Chrysler Corp.*, 577 F.2d 624, 634 (9th Cir. 1978)). "Of course, lack of good faith does not mean simply unfairness or breach of a franchise agreement. If the manufacturer has an objectively valid reason for its actions, the plaintiff cannot prevail without evidence of an ulterior motive." *Action Nissan, Inc.*, 454 F. Supp. 2d at 118 (internal citations and quotations omitted).

Here, Plaintiff alleges that Defendant failed to act with "good faith" with respect to the provision of the Dealer Agreement requiring Defendant not to unreasonably withhold consent to change in ownership. (Pl. Br. at 13). Defendant contends that the claim fails because there is no evidence that Defendant made any wrongful demands that were enforced by threats of coercion or intimidation. (Def. Br. at 15). Plaintiff argues that "[t]he circumstances of this case, as well as HMA's course of conduct leading up to the March 19 Denial Letter, demonstrate that HMA coerced Glick by using a pretextual reason to reject the proposed sale and franchise transfer between Glick and Gabrielli." (Pl. Br. at 14). Plaintiff further contends that the "facts and circumstances" demonstrate that an issue of fact exists as to "whether HMA sought the wrongful demand of terminating Glick's franchise without complying with the requirements of New York State law." (*Id*. at 18-19). Specifically, Plaintiff asserts that Defendant used its authority over the proposed transfer as a means for circumventing the statutory requirements for terminating a franchise. (*Id*.).

Even assuming *arguendo* that Defendant had the ulterior motive to terminate Plaintiff's franchise, Plaintiff does not offer evidence of any coercive conduct enforcing a wrongful demand made by Defendant. Plaintiff generally references the "circumstances of this case" and a "course of conduct leading up to the March 19 Denial Letter" (Pl. Br. at 14), but does not identify any specific conduct that was coercive. Nor does Plaintiff explain what Defendant was coercing Plaintiff to do. *C.f. Action Nissan, Inc.*, 454 F. Supp. 2d at 120 (denying summary judgment as to ADDCA claim where the franchisor's allegedly threatening or coercive behavior included repeated threats to terminate the franchise agreement unless the dealer relocated and frustration of the dealer's attempts to relocate through purposeful obfuscation and delay in approving both relocation sites and repairs to its existing facility). "[A] complete failure of proof concerning an

essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Plaintiff's failure to produce any evidence of coercive conduct or a wrongful demand constitutes a failure of proof and is insufficient to create a genuine dispute of material fact. *See Gray v. Toyota Motor Sales, U.S.A., Inc.*, 806 F. Supp. 2d 619, 627 (E.D.N.Y. 2011) (dismissing ADDCA claim based on defendant's refusal to consent to proposed franchise transfers where Plaintiff failed to allege that defendant engaged in coercive, intimidating, or threatening conduct); *Gen. Motors Corp. v. Dealmaker, LLC*, No. 07-CV-00141, 2007 WL 2454208, at *5 (N.D.N.Y. Aug. 23, 2007) (dismissing ADDCA claim where "[e]ven assuming GM wanted to terminate Seaway's dealership, there is no allegation supporting a plausible claim of coercion or intimidation, or of threats of coercion or intimidation.").[4] Defendant is, accordingly, entitled to summary judgment dismissing the First Claim for Relief.

II.    <u>Third Claim for Relief: Breach of Contract</u>

Plaintiff's Third Claim for Relief alleges that Defendant unreasonably withheld consent to the transfer in violation of Section 5 of the Dealer Agreement which provided that any change in ownership of the dealership "requires the prior written consent of HMA, which HMA shall not unreasonably withhold." (Compl. ¶¶ 58-65; 56.1 ¶ 2). Defendant argues this claim fails because (i) Defendant's denial based on Gabrielli's lack of car dealership experience was reasonable as a

---

[4] *See also Fray Chevrolet Sales, Inc. v. Gen. Motors Corp.*, 536 F.2d 683, 685 (6th Cir. 1976) ("In the absence of coercion, intimidation, or threats thereof, there can be no recovery through the day-in-court statute, even if the manufacturer otherwise acted in 'bad faith' as that term is normally used.")(internal quotations and citations omitted); *Mathew Enter., Inc. v. FCA US, LLC*, No. 16-CV-03551, 2016 WL 6778534, at *6 (N.D. Cal. Nov. 16, 2016), *aff'd*, 751 F. App'x 983 (9th Cir. 2018).

matter of law; and (ii) the evidence does not support that Defendant had an ulterior motive or that Defendant would have approved the transfer "but for" such ulterior motive. (Def. Br. at 8). The Court addresses each argument *seriatim*.

    a.  Reasonableness

Here it is undisputed that Romo Gabrielli, the proposed Dealer Principal of the dealership, did not have experience owning or operating a new car dealership at the time of the proposed transfer. (56.1 ¶ 8). Defendant refused the proposed transfer on the stated ground that Gabrielli did not meet its requirement of having experience owning and operating a new car dealership. (*Id.* ¶ 7). The Court finds that Defendant relied on a reasonable factor in refusing to consent to the proposed transfer.[5]

In assessing whether consent was unreasonably withheld pursuant to Section 5 of the Dealer Agreement, cases analyzing the analogous statutory requirement—N.Y. Veh. & Traf. Law § 463(2)(k) which makes it unlawful to "unreasonably withhold consent" to a transfer—are instructive. *See i.e. Gray*, 806 F. Supp. 2d at 623-24 (granting motion to dismiss breach of contract claim where plaintiff alleged franchisor unreasonably withheld consent to transfer based on customer satisfaction scores). Specifically, Defendant relies on the "reasonableness" standard articulated in *In re Van Ness Auto Plaza, Inc.*, which held that withholding consent is reasonable "if it is supported by substantial evidence showing that the proposed assignee is materially deficient with respect to one or more appropriate, performance-related criteria." 120 B.R. 545, 549 (Bankr. N.D. Cal. 1990)*; see also Pacesetter Motors, Inc. v. Nissan Motor Corp. in U.S.A.*,

---

[5] Plaintiff argues that "reasonableness" is a "fact intensive question" that cannot be determined on summary judgment. (Pl. Br. at 22). But the case Plaintiff relies on, *Maltbie's Garage Co., Inc. v. Gen. Motors LLC*, is inapplicable given that the court held that it was "unable to make this [reasonableness] determination at the *motion to dismiss stage*." No. 21-CV-00581, 2021 WL 4972738, at *5 (N.D.N.Y. Oct. 26, 2021) (emphasis added).

913 F. Supp. 174, 179 (W.D.N.Y. 1996) (finding that the location of the dealership is an "appropriate, performance-related criteria" that supported Nissan's refusal to consent to the proposed sale) (applying California law). The *Van Ness* court identified "the extent of prior experience of the proposed dealer" as one of several factors relevant to assessing the likelihood of success or performance under the franchise. *In re Van Ness Auto Plaza, Inc.,* 120 B.R. at 547.[6]

Further, at least one court in this Circuit found the consideration of a prospective dealer's prior experience to be reasonable. *See Ford Motor Co. v. W. Seneca Ford, Inc.*, No. 91-CV-00784, 1996 WL 685723, at *6 (W.D.N.Y. Nov. 21, 1996), *as amended* (Jan. 30, 1997) (finding rejection of a proposed dealership sale reasonable where one of the proposed buyers did not have any retail sales experience and the other proposed buyer had low customer satisfaction ratings at the dealership he managed); *see also Bevilacque v. Ford Motor Co.*, 605 N.Y.S.2d 356, 358 (App. Div. 1993) (finding it was reasonable to withhold consent to a franchise sale where the prospective purchaser had "limited experience" in automotive industry). Accordingly, the Court finds that the extent of a prospective dealer's prior experience operating the type of dealership that is the subject of the transfer is an appropriate consideration related to performance.

Moreover, the specific circumstances of this case do not render prior car dealership experience an unreasonable consideration. Plaintiff essentially argues that it was unreasonable to consider Gabrielli's lack of car dealership experience given that Mr. Gabrielli had experience

---

[6] At least two courts in this Circuit have relied on *Van Ness* to support the proposition that a prospective dealer's poor "customer satisfaction" score is a reasonable basis on which to turn down a candidate. *See i.e. Gray*, 806 F. Supp. 2d at 623; *H.B. Auto. Grp., Inc v. Kia Motors Am.*, No. 13-CV-04441, 2016 WL 4446333, at *5 (S.D.N.Y. Aug. 22, 2016) ("Customer satisfaction scores are valid grounds on which to refuse a transfer proposal.").

selling trucks[7] and believed this experience would allow him to successfully sell cars. (Pl. Br. at 22). While Mr. Gabrielli may be correct that his experience operating a heavy-duty truck dealership is transferable to the operation of a car dealership, this fact does not make it unreasonable for Defendant to require car dealership experience. Indeed, "a reviewing court should not substitute its judgment for that of the manufacturer/distributor, but only look for a substantial basis for its determination." *Pacesetter Motors, Inc.*, 913 F. Supp. at 179 (citing *In re Van Ness Auto Plaza, Inc.*, 120 B.R. at 546). The advantages of a proposed dealer of a car dealership having prior experience operating a car dealership are obvious, and the Court is not persuaded that it was unreasonable under Section 5 of the Dealer Agreement for Defendant to withhold consent on that basis.[8]

      b.  <u>Pretext Theory</u>

Plaintiff contends that even if Defendant's denial was reasonable as a matter of law, an issue of fact exists as to whether Gabrielli's lack of new car dealership experience was the "*true reason*" for the denial, and the fact that its justification was pretextual "nullifies its facial

---

[7] While there is no dispute that Gabrielli did not have prior experience operating a new *car* dealership, Plaintiff points out that Gabrielli had experience operating at least six other motor vehicle dealerships. (Pl. Br. at 22; Sullivan Decl., Ex. 4 ("R. Gabrielli Tr.") at 62:10-12)). Specifically, Mr. Gabrielli referred to himself as a "new truck dealer[]" as opposed to a "new car dealer[]." (*Id*. at 46:5-8). He testified that he did not have any experience selling new cars other than company vehicles, nor any experience selling SUVs other than to commercial clients. (*Id*. at 48:24-49:4, 57:9-15). He further testified that at some point he had been selling pick-up trucks, including "possibly" the Ford F-150. (*Id*. at 57:16-58:2, 23:8-13). He also testified that his Bridgehaven Ford dealership does business in truck sales and that it does not sell "minivans or other consumer vehicles." (*Id*. at 22:20-23:25). Accordingly, the evidence is clear that Mr. Gabrielli had experience selling trucks to commercial clients and not selling cars to the general public. (Reply at 7-8).

[8] Plaintiff also argues that Defendant's denial was unreasonable because another automaker, General Motors, "took no issue with Gabrielli's purported lack of experience." (Pl. Br. at 22) (citing R. Gabrielli Tr. at 12, 32:3-5). Without further context, this unsupported assertion about General Motor's determination is not persuasive evidence that Defendant's determination was unreasonable in this case.

'reasonableness.'"[9] (Pl. Br. at 21-28) (emphasis in original). Defendant responds that "(1) there is insufficient evidence to support, and ample evidence to contradict, the pretext theory; and (2) in any event, there is no evidence that HMA would have approved Gabrielli 'but for' an alleged desire to close the point." (Def. Br at 20). Accordingly, the Court considers whether Defendant's stated basis for denying the transfer–lack of car dealership experience–was merely pretext for Defendant's ulterior motive—to dissolve the primary market area that encompassed Plaintiff's dealership in Monticello.

Plaintiff first points to market studies performed by Defendant in the days leading up to the March 19 Denial Letter as evidence of its ulterior motive. (Pl. Br. at 7, 25; Sullivan Decl., Ex. 7 "Kato Tr.," Part 6 at 122:1-11; *id.*, Exs. 23-24). Specifically, Plaintiff highlights that one such study, the market action analysis, included a proposed scenario after dissolving Plaintiff's dealership. (Sullivan Decl., Ex. 23 at HMA_002632). Defendant explains that this proposed scenario stems from a cross-sell analysis which was conducted at the direction of one of its employees, Dave O'Brien, who thought that Plaintiff might voluntarily terminate its franchise if the transfer was rejected and wanted to determine whether Plaintiff's dealership would need to be replaced. (Def. Br. at 20-21; Reply at 9-10). Mark Kato, a Senior Group Manager for Defendant, wrote in a March 11, 2020 email that "Dave O'Brian advised that if we deny the buy/sell he thinks the dealer may [voluntarily terminate] the point." (Sullivan Decl., Ex. 23 at HMA_002607; *id.*, Ex. 9 "Grafton Tr.," Part 5 at 106:21-25). The result of the cross-sell analysis was a recommendation that if Plaintiff voluntarily terminated its Monticello dealership, the point should be dissolved because other Hyundai dealers were adequately covering the area. (Sullivan

---

[9] Courts have considered similar pretext theories in the context of withholding consent to a franchise sale or transfer. *See i.e. Gray*, 806 F. Supp. 2d at 627 (finding that "Plaintiffs' suggestion that Defendant's reliance on CSI ratings was merely a pretext for refusing consent" was insufficiently pled); *see In re Van Ness Auto Plaza, Inc.*, 120 B.R. at 550 ("The reasons stated by Porsche for withholding consent were not pretexts to mask other reasons for withholding consent.").

Decl., Ex. 23 at HMA_002608). Defendant's explanation for this cross-sell analysis is supported by its employees' testimony. (Def. Br. at 20-21; Pl. Br. at 7; Sullivan Decl., Ex. 23 at HMA_002607; *id*., Ex. 5 "O'Brien Tr.," Part 5 at 102:12-103:4, 105:10-16; Kato Tr., Part 5 at 117:8-11).

Relatedly, Plaintiff argues that the fact that Defendant's studies evaluated its performance is evidence of an ulterior motive because a franchise seller's performance is irrelevant to determining whether to approve a proposed transfer. (Pl. Br. at 7, 25; Sullivan Decl., Ex. 24 at HMA_00068-69). Defendant responds that Plaintiff's performance is standard background information included in a market action analysis (Reply at 10; Kato Tr., Part 5 at 107:3-25; Grafton Tr., Part 5 at 99:2-21; Sullivan Decl., Ex. 11 "Broussard Tr.," Part 6 at 120:8-18), as well as necessary information for a cross-sell analysis which measures the exchange of sales between various primary market areas. (Grafton Tr., Part 5 at 106:16-18). Ultimately, the fact that these market studies and evaluations were conducted in the days leading up to the transfer denial is at least some evidence of Defendant's purported ulterior motive, even if not evidence that Defendant acted on that ulterior motive.

Next, Plaintiff argues that the lack of any "written set of policies or guidelines" supporting the reason for Defendant's denial is evidence of an ulterior motive. (Pl. Br. at 8). Specifically, the ownership interest guide at the time did not include the requirement of having experience "owning and operating new car dealerships." (*Id*. at 8-9, 25; Sullivan Decl., Ex. 36). Plaintiff also takes issue with the varying terminology Defendant has used to describe the requisite experience (i.e. "car", "automobile," "motor vehicle," and "passenger vehicle" dealership experience). (Pl. Br. at 9-10, 26). Defendant contends that Plaintiff's argument regarding terminology is pure semantics, that it had no statutory or contractual obligation to have

a written policy, and that its employees' testimony shows that Defendant considered prior experience operating dealerships that sell the types of vehicles that Hyundai sells. (Reply at 8; Sullivan Decl., Ex. 8, "Hyland Tr.," Part 2 at 36:18-21, 37:12-38:7; Grafton Tr., Part 2 at 43:8-15; Kato Tr., Part 6 at 136:4-10; O'Brien Tr., Part 5 at 94:4-15; Broussard Tr., Part 4 at 77:5-78:17). Although a written policy statement was not required, the Court takes note of the fact that the experience requirement was not memorialized in writing and that the new version of the ownership interest guide, issued mere months after the denial, included new language when describing dealers' requirements: "demonstrated experience owning and operating other successful *new motor vehicle franchises* . . . ." (Pl. Br. at 10; Sullivan Decl., Ex. 37) (emphasis in original).

Finally, Defendant points out that the steps it took after the denial are inconsistent with its purported ulterior motive of closing the Monticello location. (Def. Br. at 21-22). Defendant renewed Plaintiff's Dealer Agreement effective May 5, 2020. (Sullivan Decl., Ex. 26, "O'Brien Decl." ¶ 2). In October 2020, Plaintiff proposed relocating its franchise to a nearby location in Monticello and Defendant conditionally approved the relocation (although Plaintiff ultimately decided to terminate the franchise in December 2020). (Sullivan Decl., Ex. 2 "Glick Tr." at 168:7-13; *id*., Ex. 29; Kato Tr., Part 6 at 138:4-11; O'Brien Tr., Part 6 at 118-6:20, 119:12-18). While this conduct is certainly relevant to the factual question at hand, it does not necessarily preclude a finding that Defendant sought to advance an ulterior motive when denying the transfer. Based on this record, an issue of fact remains as to whether Defendant's basis for denying the transfer was pretext for its ulterior motive of closing the Monticello location.

Defendant contends that, assuming *arguendo* that there is sufficient evidence of an ulterior motive, there is no evidence that Defendant would have approved Gabrielli if not for its

alleged desire to close the Monticello location.[10] (Def. Br. at 24). Defendant supports this proposition with employee testimony that Gabrielli's lack of experience was the sole basis for withholding consent and that the cross-sell analysis was not a factor in that decision. (*Id*. at 22). Plaintiff responds that an issue of fact exists as to whether Defendant would have approved the transfer but for its ulterior motive to dissolve the Monticello location. (Pl. Br. at 24, 28). The Court agrees with Plaintiff. Even considering the employee testimony, the documentary evidence shows that (i) Defendant considered the voluntary termination of Plaintiff's franchise as a possible outcome of denying the proposed transfer and (ii) Defendant's employee recommended that, if that termination came to fruition, Defendant should dissolve the Monticello dealership. The Court cannot determine on this record whether the recommendation to dissolve the Monticello dealership motivated, in whole or in part, Defendant to deny the transfer.

Accordingly, a genuine issue of material fact remains as to Defendant's basis for withholding consent to the transfer. The Court, therefore, cannot determine whether Defendant's withholding of consent was unreasonable under Section 5 of the Dealer Agreement. Defendant's motion is denied as to the Third Claim for Relief.

III.    Second Claim for Relief: Violation of Section 466 of the Dealer Act

The Dealer Act provides that, "[i]t shall be unlawful for any franchisor, notwithstanding the terms of any franchise contract . . . [t]o unreasonably withhold consent to the sale or transfer of an interest, in whole or in part, to any other person or party by any franchised motor vehicle dealer or any partner or stockholder of any franchised motor vehicle dealer." N.Y. Veh. & Traf.

---

[10] Defendant asserts that where, as here, a statute prohibits actions based on proscribed motives and the defendant's action was based on mixed motives, plaintiff must establish that defendant would not have made the same decision "but for" the unlawful conduct. (Def. Br. at 24-26 (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 332 (2020))). Defendant further contends that New York courts interpret statutes to be consistent with common-law rules unless the statute provides otherwise. (*Id*. (citing *Transit Comm'n v. Long Island R.R. Co.*, 235 N.Y. 345, 354-55 (1930))).

Law § 463(2)(k). The Dealer Act further provides that "[i]t shall be unlawful for a franchisor directly or indirectly to impose unreasonable restrictions on the franchised motor vehicle dealer relative to transfer, sale, right to renew or termination of a franchise, discipline, noncompetition covenants, site-control (whether by sublease, collateral pledge of lease or otherwise), right of first refusal to purchase, option to purchase, compliance with subjective standards and assertion of legal or equitable rights with respect to its franchise or dealership." N.Y. Veh. & Traf. Law § 466(1).

Plaintiff's Second Claim for Relief alleges that "Defendant unreasonably restricted Plaintiff's ability to transfer the Dealership assets to Gabrielli" in violation of Section 466 of the Dealer Act. (Compl. ¶ 55). Defendant argues that Plaintiff's allegations are more properly made under Section 463(2)(k) of the Dealer Act, but, are barred by the applicable 120-day statute of limitations. (Def. Br. at 26-29). Defendant further argues that permitting Plaintiff to use Section 466 to "evade" Section 463(2)(k)'s statute of limitations violates well-established principles of statutory construction. (*Id.*). Although Plaintiff's Second Claim for Relief may be better housed as a violation of Section 463(2)(k), the Court considers Plaintiff's claim as asserted—a violation of Section 466—which is not precluded on limitations grounds.[11] (Pl. Br. at 19-20).

"By the language of [N.Y. Veh. & Traf. L. § 466(1)], the New York Legislature prohibits a franchisor from 'directly or indirectly impos[ing] unreasonable restrictions on the franchised motor vehicle dealer relative to transfer . . . of a franchise.'" *CMS Volkswagen Holdings, LLC v. Volkswagen Grp. of Am., Inc.*, 25 F. Supp. 3d 432, 443 (S.D.N.Y. 2014), *vacated and remanded on other grounds*, 669 F. App'x 602 (2d Cir. 2016); *Gray*, 806 F. Supp. 2d at 626–27 ("[T]he

---

[11] Other Courts in this Circuit have considered a franchisor's refusal to consent to transfer of a franchise as violations of both Sections 463(2)(k) and 466. *See H.B. Auto. Grp., Inc.*, 2016 WL 4446333, at *5; *see also Gray* 806 F. Supp. 2d at 627.

harm sought to be remedied by [Section 466] is 'unreasonable restrictions' on a dealer's right to, among other things, transfer, sell or renew its franchise."); *see also Smith Cairns Subaru, Inc. v. Subaru Distrib. Corp.*, 981 N.Y.S.2d 638 (Sup. Ct. 2013). "[T]his section does not refer to a franchisor 'withholding' consent. . . ." *CMS Volkswagen Holdings, LLC*, 25 F. Supp. 3d at 443. Accordingly, the question is not whether Defendant's decision to withhold consent to the transfer was unreasonable, but whether Defendant's requirement that proposed transferees have prior car dealership experience constitutes an unreasonable restriction on Plaintiff's ability to transfer its franchise. The Court finds that it was not.

Plaintiff contends that Defendant acted unreasonably under Section 466 by basing its denial on the lack of new car dealership experience. (Pl. Br. at 21-22). But Plaintiff fails to explain how Defendant's imposition of the prior car dealership experience requirement unreasonably restricted its ability to transfer. (Def. Br. at 28-29). As discussed in detail *supra*, it was not unreasonable for Defendant to consider a prospective dealer's prior car dealership experience. *See i.e. Gray*, 806 F. Supp. 2d at 627 (dismissing Section 466 claim). Moreover, Plaintiff's pretext theory is premised on Defendant allegedly having ulterior motivations for withholding consent to the transfer and is not applicable to this statutory claim. Accordingly, the Court finds that summary judgment is warranted as to the Second Claim for Relief.

IV.    Computation of Damages

Defendant seeks, in the alternative, an order that Plaintiff's compensatory damages are limited to $350,000. (Def. Br. at 29). Pursuant to Federal Rule of Civil Procedure 56(g), "[i]f the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." "The decision of the Court to enter an order limiting

relief under Rule 56(g) 'is a matter of discretion.'" *D'Iorio v. Winebow, Inc.*, 68 F. Supp. 3d 334, 356 (E.D.N.Y. 2014).

Here, it is undisputed that the only category of damages Plaintiff is seeking is the lost sale price of the dealership (except for attorneys' fees, costs, disbursements, and interest). (56.1 ¶ 10). Plaintiff and Gabrielli executed the "Third Amendment" to the ASA on July 27, 2020 which excluded the Hyundai assets. (*Id*. ¶¶ 12-13). Plaintiff admits that "the amount that the price of the operating assets were reduced as a result of the removal of the Hyundai franchise was $350,000." (*Id*. ¶ 15). Plaintiff offers an alternate calculation of $550,000 based on the value allocated in the prior version of ASA. (*Id*. ¶ 16; Pl. Br. at 29). Plaintiff also argues that it had another buyer willing to purchase the franchise for $450,000. (Pl. Br. at 29). The Court agrees with Defendant that Plaintiff's compensatory damages are limited to the undisputed amount that it lost in the sale to Gabrielli.[12] (Reply at 13). Accordingly, the Court grants Defendant's application to limit Plaintiff's entitlement to compensatory damages for the lost sale price to $350,000.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED as to Plaintiff's First and Second Claims for Relief and DENIED as to Plaintiff's Third Claim for Relief. Additionally, Plaintiff's entitlement to damages for the lost sale price, subject to its ability to prove such damages at trial, is limited to $350,000.

The parties are directed to meet and confer and comply with Rules 6(A) and 6(B) of the Court's Individual Practices (rev. March 19, 2024) by filing the documents required therein,

---

[12] *See V.S. Int'l, S.A. v. Boyden World Corp.*, 862 F. Supp. 1188, 1197 (S.D.N.Y. 1994) ("In assessing damages, it is axiomatic that a party injured by a breach of contract must be placed in the same economic position in which he would have been, had the contract been fully performed . . . [A] plaintiff must prove the existence of damages with certainty in order to recover for breach of contract . . . New York law does not countenance damage awards based on [s]peculation or conjecture.") (internal quotations omitted).

which include a joint pretrial order, proposed joint *voir dire* questions, joint requests to charge, joint verdict form, and any motions *in limine*, on or before October 1, 2024.

A pretrial conference has been scheduled for December 4, 2024 at 2:30 p.m. to be held in Courtroom 520 of the White Plains courthouse.

The Clerk of Court is respectfully requested to terminate the pending motion sequence (Doc. 45).

SO ORDERED.

Dated: White Plains, New York
        August 28, 2024

_____
Philip M. Halpern
United States District Judge